No objections to this Report and Recommendation (the "R&R") have been received, so the Court reviews it for clear error. Finding no error, clear or otherwise, the Court adopts the R&R as the decision of the Court. The petition is dismissed. The Clerk shall close the case.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SANABRIA,

                    **Petitioner,**

      - *against* -

MARTUSCELLO,

                    **Respondent.**

SO ORDERED.

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.          10/8/19

**15 Civ. 1534 (CS)(LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.[1]**

       Currently before the Court is a petition (the "Petition") for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 filed by Petitioner Eric Sanabria ("Petitioner"), proceeding pro se,

challenging his 2011 judgment of conviction for Attempted Burglary in the First Degree,

Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon

in the Third Degree.  Docket # 36 ("Amended Petition").  Petitioner was sentenced on July 13,

2011, to eight years imprisonment plus five years post-release supervision on the burglary and

criminal possession of a weapon in the second-degree charges, and an indeterminate term of

three to six years imprisonment on the criminal possession of a weapon in the third-degree

---

[1] On May 20, 2015, Petitioner's application was referred to this Court by the Honorable Cathy
Seibel.  Docket # 11 ("Order").

charge, all sentences to run concurrently.   Transcript: Docket # 9-10 at 11-13.[2]  The Petition[3] sets forth four grounds for habeas relief: (1) the prosecution withheld an exculpatory letter ("Burgess letter") and allocution statements made by co-defendants in violation of Petitioner's constitutional rights under Brady[4] and Rosario[5], (2) prosecutorial misconduct and legal insufficiency of the evidence as it relates to an allegedly suggestive in-court identification, (3) trial court error for failing to give a duress jury charge, and (4) ineffective assistance of trial and appellate counsel.  Id.

For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed in its entirety.

## BACKGROUND

### I.    The Crime

On March 25, 2010, Petitioner and his girlfriend, Dionne Burton, were looking for a place to stay.  Tr. # 9-8: 87-88.  Dionne's friend, Danielle Gove, offered her residence to the couple.  Id.  When they arrived at Gove's residence another individual, Christopher Thomas, was already there.  Id.  Thomas asked Petitioner what he was doing at Gove's residence, and Petitioner responded that he did not have a place to live.  Id.  Petitioner had wanted to get to

---

[2] Citations to the various state court transcripts attached to Docket # 9 (Resp't Memo. of Law) as Docket ## 9-5, 9-6, 9-7, 9-8, 9-9, 9-10, 9-11 will be abbreviated as "Tr. [Docket number]: [page number]."  All page numbers referenced in transcript citations refer to the page number of the ECF document.

[3] On November 28, 2016, this Court deemed "the Amended Petition to include all of the claims set forth in both the Proposed Amended Complaint and the Amended Petition."  Docket # 41 ("Order").  The Court also deemed the allegations in the Proposed Amended Complaint and the Amended Petition "to assert claims for both prosecutorial misconduct and legal insufficiency of the evidence based on the suggestive identification."  Id.

[4] Brady v. Maryland, 373 U.S. 83 (1963).

[5] People v. Rosario, 9 N.Y.2d 286 (1961).

Warwick, New York, to ask his mother for help. Id. at 89. Thomas told Petitioner that one of Thomas's friends was coming to the Gove residence, and Petitioner could ask that friend for a ride to Warwick. Id. at 88. Richard Lockett, along with James Burgess, and Rashid Weston, then arrived at the Gove residence. Id. at 89. Simon Shomo arrived separately. Id. Lockett agreed to give Petitioner a ride. According to Petitioner, he did not know Lockett, Burgess, Weston, or Shomo, but he accepted the offer. Id.

Later that night at Kings Estates, located in Warwick, New York, Laureen Henry awoke to the sound of her doorbell. Tr. ## 9-7: 5-6, 9-6: 50. When Henry reached her front door, she looked through its window and saw a man who she thought was her son at the door, along with two other men standing on the steps behind him. Tr. # 9-6: 50-51. All the men were slim, according to Henry. Id. at 51, 72. Henry recognized the man located second from the door, but she could not believe that man was Petitioner, because he was over one hundred pounds thinner than Petitioner. Id. at 51-53, 63-64. Henry did not recognize the third man. Id. at 53. Before Henry could open her front door, she saw that the man standing nearest to her door had a bandana over his face and held a gun at his side. Id. at 51, 54. Henry ran upstairs to her bathroom where she called 9-1-1. Id. at 51, 55-56. As she ran, she heard a slap and kick at the door. Id. at 55. While on the phone with 9-1-1, Henry saw one of the men leaving. Id. at 56. She did not see where the other two men went. Id.

According to Petitioner, he was in Lockett's car for the entire attempted burglary. Tr. # 9-8: 91-92. Petitioner had ridden with Lockett, Burgess, Westin, and Shomo from Gove's residence to Kings Estates. Id. at 89-91. As the group approached Kings Estates, Petitioner heard a clicking sound, presumably the sound of a gun. Id. at 90. Petitioner asked to pull over, that Petitioner would "walk to the Jiffy store to call [his] mother." Id. As Petitioner motioned to

open the car door, Burgess grabbed him and told him to "[g]et the F in." Id. at 91. The car stopped inside King Estates and everyone exited the vehicle except Petitioner. Id. Petitioner sat in the rear passenger-side seat and tried to call his girlfriend. Id.; Tr. # 9-7:10-11. He saw the other men walk toward the end of the corner and begin speaking to an unidentified person. Tr. # 9-8: 91. At the same time, another car drove right in front of Lockett's car so that Petitioner could not get out of the car. Id. Petitioner believed the occupants of that car were members of the Bloods gang. Id. at 91-92. The men hurried back into Lockett's car and it sped away. Id. Officer Oresto, from the Town of Warwick Police Department, was responding to Henry's 9-1-1 call and was approaching the entrance to Kings Estates. Tr. # 9-7: 4-6. Oresto's patrol car was nearly struck head-on by Lockett's fleeing vehicle. Id. at 6. As Lockett's car drove past, Oresto saw a small handgun being thrown from the rear, passenger-side window. [6] Id. at 6-7. Oresto then made a U-turn in order to pursue Lockett's vehicle. Id. at 8. During the chase Lockett tried to put his car in reverse, and the car stalled. Tr. # 9-8: 92. At that point, Lockett and Petitioner (the rear passenger-side occupant) exited the car and fled in opposite directions. Id.; Tr. # 9-7: 8-10. Oresto had seen Petitioner a few times before and recognized him as the man fleeing from the rear passenger-side of Lockett's car. Tr. # 9-7: 10-11. Petitioner testified that he got out of the car and ran because he "was scared of everything going on." Tr. # 9-8: 92.

Petitioner ran first to the nearby Wickham Village housing complex where he found Samara Astorino's house (Samara previously had dated Petitioner's son). Tr. ## 9-7: 58-59, 9-8: 92. Petitioner knocked on the door but was told to leave. Tr. # 9-8: 92. From there Petitioner went to Vincent Davis' house, which was also in Wickham Village. Id. at 92-93; Tr. # 9-7: 67-

---

[6] According to Petitioner, the front passenger, Westin, threw a rag out of the front passenger-side window. Tr. # 9-8: 92.

68. Davis knew Petitioner through Petitioner's father. Tr. # 9-7: 67. Davis called a taxi for Petitioner and gave him money for the fare. Tr. # 9-7:68-69; Tr. # 9-8: 93. The taxi driver was another of Petitioner's acquaintances. Tr. # 9-8: 93. Petitioner gave the driver several drop-off destinations including Goshen, New York and Newburgh, New York. Id.; Tr. # 9-7: 73-74.

The taxi driver noticed the police as she drove Petitioner out of Wickham Village. Id. at 76. According to the driver, she told Petitioner the police were pulling them over and saw Petitioner sitting on the floor in the backseat of the taxi. Id. at 76-77. The taxi pulled over near the entrance to Kings Estates. Id. at 77. Police officers ordered the driver out of the taxi and then removed Petitioner from the backseat area. Id. at 78. Petitioner was taken into custody. Tr. # 9-8: 11-12, 20-21. Later Officer Blackwell, an officer with the Town of Warwick Police Department, found a gun at the entrance to Kings Estates. Id. at11-12.

At trial, Henry (the victim) had trouble identifying Petitioner. Henry testified that she had worked with Petitioner's step-father, OJ, for over six years. Tr. # 9-6:49. The following exchanged occurred:

> Q: When you say OJ, who is OJ?
> A: That's Eric father (sic).
> Q: When you say Eric, do you know Eric's last name?
> A: No, I know Big Eric and Little Eric.
> Q: So you know Eric as Big Eric.
> A: Yes?
> Q: And a Little Eric?
> A: Yes.
> Q: Do you see the person you know as Big Eric in the courtroom today?
> A: No.
> Q: Do you see the person you know as Little Eric in the courtroom today?
> A: No Eric. He's in jail.
> Q: Well, do you see anyone that you recognize in the courtroom right now?
> A: No.

Id. The prosecutor then directed Henry through her testimony of what happened the night of the incident. Id. Henry referred to Petitioner as being present but repeatedly stated that she could

not believe the man was Petitioner because of the drastic difference in weight between him and the person she remembered. Id. at 51-53. After eliciting further testimony surrounding the events of that night, the prosecutor returned to the matter of identifying Petitioner. The following exchange occurred:

> Q: Do you see the person sitting to the left of me in the middle of the female and the male? Do you see that person?
> A. Yes.
> Q. Do you know who that person is?
> A. That's Eric.
> Q. That's Big Eric?
> A. Yes.
> Q. And that is the same Big Eric who was at your front door on March 25 of 2010?
> A. Yes. Yes. He get back fat (sic).
> Q. Sorry, what was that?
> A. He put on back a lot of weight.
> Q. Okay. So when you first saw him back on March 25 he was a lot - -
> A. Skinny.
> Q. - - slimmer than he is today?
> A. He was skinny.
> Q. But that person that you see in the courtroom is the person who was at your door on March 25?
> A. Yes.

Id. at 57-58. Henry testified that she "didn't know it was Eric at the moment" and that she did not tell the 911 operator that Petitioner was at her door. Id. at 53, 67-68. Henry later testified that she had known Petitioner for about seven years and that they had worked together for about a year. Tr. # 9-6:66-67. During argument on a trial order of dismissal held outside the presence of the jury Petitioner's counsel stated, "Ms. Henry identified [Petitioner] by pointing him out between the two people sitting at the defense table." Tr. # 9-8: 80. Petitioner's counsel noted that Henry's description of the three men at her door that night conflicts with the descriptions given by the other witnesses about Petitioner's weight at the time of the incident. Id. Nearly all the other witnesses testified that Petitioner looked the same or very similar at trial as he had at

the time of the incident.  Tr. ## 9-7: 49, 65, 70; 9-8:15, 25, 58, 68-69; see 9-8: 95.  There were

also records admitted into evidence that listed Petitioners weight at or near the date of the

incident as approximately 200 pounds.  Tr. # 9-8: 84-85.

## II.   Procedural History

On July 20, 2010, the Orange County Grand Jury indicted Petitioner, charging him with

Attempted Burglary in the First Degree (N.Y. Penal Law §§ 110, 140.30 (4)), Criminal

Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03 (3)), and Criminal

Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(1)).  Docket # 9 ("Resp't

Memo.), Exh. 1.  On March 3, 2011, a jury convicted Petitioner of all counts charged in the

indictment.  Tr. # 9-9: 90-91.  On July 13, 2011, the court sentenced Petitioner to eight years

imprisonment plus five years post-release supervision on each of the attempted burglary and

criminal possession of a weapon in the second-degree charges and an indeterminate term of three

to six years imprisonment on the criminal possession of a weapon in the third-degree charge to

run concurrently. [7]  Tr. # 9-10: 11-13.

**Motion to Set Aside the Verdict[8]**

On or about April 6, 2011, Petitioner filed a motion asking the trial court to set aside the

verdict and dismiss the indictment against him.  Docket # 9, Exh. 6.  Petitioner argued that the

verdict was legally insufficient and against the weight of the evidence because the evidence did

---

[7] On June 23, 2011, a jury convicted Petitioner of two counts of Criminal Possession of Stolen Property in the Fourth Degree, unrelated to the March 2010 incident.  Tr. # 9-10: 8-9.  Petitioner was sentenced to two indeterminate terms of two to four years imprisonment to run concurrently with each other and consecutively to the March 2011 convictions.  Id. at 12.  Petitioner is not challenging his June 2011 conviction in this habeas petition.

[8] Petitioner's counsel moved the trial court based upon a reserved motion for a trial order of dismissal pursuant to N.Y. C.P.L. § 290.10.  Docket # 9, Exh. 6.  Whether the motion was reserved was disputed.  Id., Exh. 7.  In the alternative, Petitioner's counsel moved to set aside the verdict pursuant to N.Y. C.P.L. § 330.30.  Id., Exh. 8.

not prove beyond a reasonable doubt that Petitioner was at Henry's door, that Petitioner had the mental state required for conviction, and that Petitioner possessed a gun. Id. On June 15, 2011, the trial court denied Petitioner's motion finding that

> There is nothing in the record subsequent to the People's case that would change the Court's opinion as to the sufficiency of the proof. There is, likewise, nothing in the record that would require a reversal or modification of the judgment as a matter of law, pursuant to CPL § 330.30.

Id., Exh. 9 at 74.

**Direct Appeal**

On or about May 3, 2012, Petitioner appealed the judgment to the Appellate Division, Second Department. Id., Exh. 10. There Petitioner asserted five points of error: (1) legal and factual insufficiency of the evidence that Petitioner committed the crimes alleged, (2) legal and factual insufficiency of the evidence that Petitioner illegally possessed a weapon, (3) prosecutorial misconduct related to the admission of prior criminal acts evidence in violation of Petitioner's right to a fair trial, (4) ineffective assistance of counsel for counsel's failure to request a jury instruction on duress, and (5) trial court error based on its allegedly improper sentencing of Petitioner as a predicate felony offender depriving him of his due process and statutory rights. Id. On October 23, 2013, the Appellate Division affirmed the judgment of conviction. People v. Sanabria, 110 A.D.3d 1012 (2d Dept. 2013). It determined that (1) Petitioner's claim that there was legally insufficient evidence to establish his lack of license to possess a gun was unpreserved, and, in any event, the evidence was legally sufficient to establish Petitioner's guilt on all counts of which he was convicted; (2) the verdict was not against the weight of the evidence; (3) Petitioner's claim regarding a prior uncharged crime was unpreserved, and, in any event, any error was harmless, (4) Petitioner failed to establish ineffective assistance of counsel; (5) Petitioner's sentencing claim was unpreserved, the trial

court substantially complied with N.Y. C.P.L. § 400.21, and any failure in that regard was harmless; and, (6) the remaining contention was without merit.[9] Id.  On or about November 1, 2013, Petitioner filed for leave to appeal the judgment of the Appellate Division to the Court of Appeals.  Resp't Exh. 13.  In its application for leave, Petitioner re-raised all the claims presented in his initial appeal.  Id.  The Court of Appeals denied Petitioner's application on February 25, 2014.  People v. Sanabria, 22 N.Y.3d 1141 (2014).

**Application for Writ of Error Coram Nobis**

On or about June 26, 2014, Petitioner applied for a writ of error coram nobis in the Appellate Division, Second Department.  Docket # 9, Exh. 16.  The application asserted two claims for ineffective assistance of appellate counsel: (1) appellate counsel failed to raise an ineffective assistance of trial counsel claim for trial counsel's failure to secure Petitioner's right to testify before the grand jury and move to dismiss the indictment, and (2) appellate counsel failed to submit to the Appellate Division a copy of the Burgess letter, an affidavit from Petitioner's co-defendant stating that the co-defendant had sole possession and control of the weapon in question.  Id.  On February 25, 2015, the Appellate Division denied Petitioner's coram nobis application for failure to establish an ineffective assistance of appellate counsel claim.  People v. Sanabria, 125 A.D.3d 1012 (2d Dept. 2015).  There is no evidence before the Court that Petitioner appealed the denial to the Court of Appeals.

**First and Second Motions to Vacate the Judgment**

On or about April 3, 2013, Petitioner submitted an order to show cause and a motion to vacate the judgment pursuant to N.Y. C.P.L. § 440.10 (1)(h) ("April 2013 motion").  Docket # 9, Exh. 19.  Petitioner raised two ineffective assistance of counsel claims: (1) ineffective assistance

---

[9] It does not appear to the undersigned that any contentions remained.

of counsel due to counsel's failure to effect Petitioner's desire to testify at the grand jury and (2) ineffective assistance of counsel due to counsel's failure to challenge Petitioner's indictment. Id. After receiving no decision on his first motion, on or about November 11, 2015, Petitioner submitted a second motion to vacate the judgment pursuant to N.Y. C.P.L. §§ 440.10 (g) – (h) ("November 2015 motion").  Docket # 45 ("Resp't Memo."), Exh. 22.  Petitioner raised the following three grounds for vacating the judgment: (1) newly discovered evidence, (2) withholding of relevant material evidence, and (3) denial of a fair trial due to a tainted in-court witness identification.[10]

On March 9, 2016, the trial court denied Petitioner's April 2013 motion on the grounds that (1) failure to provide for Petitioner to testify before the Grand Jury does not constitute ineffective assistance of counsel, (2) any motion regarding failure to arraign Petitioner would have been unsuccessful because Petitioner was "properly and timely arraigned on [the] special information at trial", and (3) the claims raised in the motion are matters of record and should have been presented in Petitioner's direct appeal.  Docket # 45, Exhibit 26.  On March 8, 2016, the trial court denied Petitioner's November 2015 motion claiming (1) the "newly discovered evidence" Petitioner presented was available to Petitioner during trial or at least at the time Petitioner appealed the conviction and (2) the evidence would not have resulted in a more favorable verdict for Petitioner.  Docket # 45, Exh. 25.  There is no record or assertion that Petitioner sought leave to appeal either denial.

---

[10] The motion papers also asserted a violation of Petitioner's rights under the Sixth and Fourteenth Amendments, but the substance of the motion suggests that these violations relate to the withheld evidence and witness identification claims.

**Petition for Writ of Habeas Corpus**

On February 21, 2015, Petitioner filed his petition for a writ of habeas corpus.[11]  In that petition Petitioner raised the following claims: (1) legal and factual insufficiency of the evidence that Petitioner committed the crimes alleged, (2) legal and factual insufficiency of the evidence that Petitioner illegally possessed a weapon, (3) prosecutorial misconduct denied Petitioner a fair trial, (4) ineffective assistance of trial counsel for failing to seek a duress jury charge and (5) trial court error in sentencing Petitioner as a predicate felon.  Docket # 2 ("petition").  On July 8, 2016, Petitioner moved to amend his habeas corpus petition.  Docket # 36.  The motion included an amended petition and a proposed amended complaint, which asserted overlapping but separate claims.  On November 28, 2016, this Court granted Petitioner's motion to amend its petition and ordered that the amended petition would "include all of the claims set forth in both the Proposed Amended Complaint and the Amended Petition."[12]  Docket # 41.

---

[11] Petitioner mailed his petition on February 21, 2015, and that date is used as the date of filing.  See Harris v. Senkowski, 298 F. Supp. 2d 320, 335 (E.D.N.Y. 2004) (quoting Nobel v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001)).  By operation of statute, the one-year limitations period for filing the instant petition was tolled during the period when Petitioner's April 2013 motion was pending.  See 28 U.S.C. § 2244(d)(2).  The trial court decided the April 2013 motion on March 9, 2016.  Pursuant to state law, Petitioner had 30 days to seek leave to appeal the trial court's decision.  see N.Y. C.P.L. §§ 460.10(4)(a).  One year from that date, i.e. the close of the limitations period, is April 7, 2017.  Therefore, the Petition, which was filed on February 21, 2015, and amended on November 28, 2016, is timely.

[12] On July 5, 2017, the undersigned granted Petitioner's request to add additional exhibits to his Petition.  Docket # 52 ("Memo Endorsement").  On August 10, 2017, the undersigned granted Petitioner's request to provide additional documents to aid the Court in considering the Petition.  Docket # 56 ("Memo Endorsement").  The undersigned has not received any additional materials subsequent to either request being granted, and no receipt of additional materials by the Clerk's Office is listed on the docket sheet.

## DISCUSSION

### I.   Applicable Law

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,
621 (1998).  To be granted a writ of habeas corpus from a federal district court, a petitioner must
fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

Before a federal district court may review the merits of a state criminal judgment in a
habeas corpus action, the court must first determine whether the petitioner has complied with the
procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If a petitioner has met these
threshold requirements, a federal district court generally may hear an application for a writ of
habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the
ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the
United States." 28 U.S.C. § 2254(a).  The court must then determine the appropriate standard of
review applicable to the petitioner's claim(s) in accordance with § 2254(d).

Under AEDPA, available state remedies must be exhausted before a federal court may
consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see
also Picard v. Connor, 404 U.S. 270, 275 (1971).  The exhaustion requirement is set forth in 28
U.S.C. § 2254(b)(1), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted unless
> it appears that--
> > (A) the applicant has exhausted the remedies available in the courts
> > of the State; or
> > (B) (i) there is an absence of available State corrective process; or
> > > (ii) circumstances exist that render such process ineffective to
> > > protect the rights of the applicant.
> (c) An applicant shall not be deemed to have exhausted the remedies
> available in the courts of the State, within the meaning of this section, if he

[or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).  In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney Gen. of the State of New York, 696 F.2d 186, 191 (2d Cir. 1982).

The Second Circuit has adopted a "two-stage inquiry for determining whether the requisite exhaustion has occurred."  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Id.; see also Picard, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191) (addition in original); Picard, 404 U.S. at 276 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  In other words, the state court claim must have (1) raised the same "factual and . . . legal premises" as the federally asserted claim and (2) have been presented in a way that was "likely to alert the [state] court to the claim's federal nature."  Daye, 696 F.2d at 191-92.  A claim may use phrases such as "under the due process clause or under the Constitution, that expressly spell out the petitioner's reliance on the United States Constitution as his [or her] legal basis for relief," to satisfy the fair presentation requirement.  Klein, 667 F.2d at 282 (internal quotation marks omitted).  "The ways in which a state defendant may fairly present to the state courts the constitutional nature of his [or her] claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of

the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegations of a pattern of facts that is well within the mainstream of constitutional litigation." Daye, 696 F.2d at 194.

"[After] having presented his [or her] federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim." Klein, 667 F.2d at 282. However, a petitioner "need not have invoked every possible avenue of state court review" to qualify for relief under AEDPA. Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (citation omitted). A petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "A 'complete round' requires that the petitioner must 'present[] his [or her] claim to the highest court of the state.' " Galdamez, 394 F.3d at 73 (quoting Morgan v. Bennet, 204 F.3d 360, 369 (2d. Cir. 2000)) (additions and deletions in original) (internal citation omitted). This opportunity to review the constitutional claim can occur through either the direct appeal or the collateral review process. See Klein, 667 F.2d at 282-83 (citing Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979); Forman v. Smith, 482 F. Supp. 941, 946 (W.D.N.Y. 1979), rev'd on other grounds, 633 F.2d 634 (2d Cir. 1980)).

If a petitioner fails to present his or her federal constitutional claim to the highest state court able to review it, the claim is unexhausted. See id. (citations omitted); Washington v. Superintendent, Otisville Corr. Facility, No. 96 Civ. 2729 (SAS), 1997 U.S. Dist. LEXIS 4587 at

*8-9 (S.D.N.Y. Apr. 11, 1997)[13] (citing Daye, 696 F.2d at 191; Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994)) ("State court remedies will not be deemed exhausted until a habeas petitioner has given the highest state court of competent jurisdiction a fair opportunity to consider his [or her] federal claim by informing it of both the factual and legal premises of the claim."). Unexhausted claims are not eligible for federal habeas review and should be dismissed. See 28 U.S.C. § 2254(b)(1)(A); McKethan v. Mantello, 292 F.3d 119, 122 (2d Cir. 2002) (citing Rose v. Lundy, 455 U.S. 509, 510 (1982); Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

Where there is no available avenue to exhaust an unexhausted claim in state court, the claim is deemed exhausted and procedurally defaulted. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d. Cir. 1991); c.f. 28 U.S.C. § 2254(c). AEDPA prohibits federal courts from reviewing procedurally defaulted claims unless the petitioner can demonstrate either cause for the state court default, and prejudice resulting therefrom, or "a sufficient probability that [ ] failure to review his [or her] federal claim will result in a fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000); Coleman, 501 U.S. at 749-50. The Supreme Court has established that a fundamental miscarriage of justice requires a showing of actual innocence. See Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012) (quoting DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006)); Schlup v. Delo, 513 U.S. 298, 321-22 (1995).

Even where a timely and exhausted claim is raised, a federal court must abstain from reviewing such a claim when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default." See Harris v. Reed, 489 U.S. 255, 262 (1989); see also Coleman, 501 U.S. at 730. A state court decision will be

---

[13] Copies of all unpublished opinions and decisions available only in electronic form cited herein have been mailed to Petitioner. See Local Civil Rule 7.2; Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

"independent" when it "fairly appears" to rest primarily on state law.  See Jimenez v. Walker,
458 F.3d 130, 138 (2d Cir. 2006) (citing Coleman, 501 U.S. at 739-40, 745, 750, and Harris, 489
U.S. at 262).  A decision will be " 'adequate' only if it is based on a rule that is 'firmly established
and regularly followed' by the state in question.' "  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir.
1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

Provided a claim meets all of AEDPA's procedural requirements, a federal court must
then apply AEDPA's deferential standard of review to claims decided on the merits in state court.
See Torres v. Berbary, 340 F.3d 63, 67-68 (2d Cir. 2003).  Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--(1)
> resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2)
> resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  "A state court's decision is 'contrary to' clearly established Supreme Court
precedent if 'the state court arrives at a conclusion opposite to that reached by [the Supreme]
Court on a question of law or if the state court decides a case differently than [the Supreme]
Court has on a set of materially indistinguishable facts.' "  Torres, 340 F.3d. at 68 (quoting
Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).  "[A]n 'unreasonable application' of 'clearly
established' Supreme Court precedent occurs when a state court 'identifies the correct governing
legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to
the facts of the prisoner's case.' "  Id. (quoting Williams, 529 U.S. at 413).  The federal court
must determine whether the state court's application of clearly established federal law was
objectively unreasonable.  Id. at 68-69 (citation omitted).  In the Second Circuit, "the 'objectively

unreasonable' standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Id. at 69.  Where a state court's factual determination is at issue, the federal court must presume the state court's factual determination was correct. 28 U.S.C. § 2254(e)(1).  Petitioner "[has] the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

## II.   Petitioner's Habeas Claims

### A. Prosecutorial Misconduct: Withheld Exculpatory Evidence

Petitioner asserts that the prosecution engaged in misconduct, alleging that it withheld "allocution and exculpatory statements made by co-defendants at a plead (sic) hearing that would of (sic) exonerated the [P]etitioner as to guilt of 'Constructive Possession of a Weapon,' " and the Burgess letter. Docket # 36.  According to Petitioner, the prosecution violated Petitioner's right to due process of law as guaranteed by People v. Rosario, 9 N.Y.2d 286 (1961), and Brady v. Maryland, 373 U.S. 83 (1963).[14] Id.  As to the "allocution and exculpatory statements" of Petitioner's co-defendants, Petitioner identifies neither the speaker nor the substance of the statements allegedly withheld.  The Burgess letter, on the other hand, was submitted to the Court. In it, Burgess affirmed that he had sole possession and control of the gun that was thrown from the perpetrators' car after the attempted burglary.  Docket # 45, Exh. 31 and 32.  The gun formed

---

[14] A Rosario violation implicates state, not federal, law.  To the extent this prosecutorial misconduct claim relies on a Rosario violation, the claim is not cognizable on federal habeas review. Linnen v. Poole, 689 F. Supp. 2d 501, 546-47 (W.D.N.Y. 2010) (collecting cases); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' ") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  A Brady violation, on the other hand, is a violation of federal constitutional law. See Brady, 373 U.S. at 87.  A Brady violation requires proof that "[t]he evidence at issue [was] favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence [was] suppressed by the State, either willfully or inadvertently; and [that] prejudice [] ensued." Stickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Moore v. Illinois, 408 U.S. 786, 794-95 (1972).

the basis of Petitioner's convictions for criminal possession of a weapon in the second and third degrees. Petitioner contends that the Burgess letter negates the constructive possession theory that he alleges supported his convictions. Docket ## 36, 49 ("Reply").

Petitioner raised this prosecutorial misconduct claim as a due process violation[15] in the November 2015 motion.[16] The affidavit accompanying Petitioner's motion references withheld material evidence in violation of the United States Constitution and describes the Burgess letter. Docket # 45, Exh. 22. The trial court denied Petitioner's November 2015 motion on procedural grounds: it found that the Burgess letter was not newly discovered evidence because Petitioner "was aware of this statement at the time of trial or at least at the time he appealed his conviction" and "could have raised this issue prior to this motion."[17] Id., Exh. 25.

The Court cannot review Petitioner's prosecutorial misconduct claim because (1) he failed to exhaust the claim, and (2) the trial court's denial rested on an independent and adequate state law ground. First, to exhaust a claim presented in a § 440.10 motion, Petitioner must have sought leave to appeal the denial to the Appellate Division. See Brewer v. Cunningham, No. 13 Civ. 2873 (NSR) (PED), 2018 U.S. Dist. LEXIS 21949 at *40-41 (S.D.N.Y. Feb. 8, 2018) (citing

---

[15] The November 2015 motion asserted a violation of due process and made no reference to either Brady or Rosario.

[16] Respondent contends that Petitioner only raised this claim in his reply to Respondent's opposition. Docket # 45 at 13. Petitioner asserts that the November 2015 motion was not a reply but a second motion. Docket # 49 at 1. The trial court appears to have viewed the November 2015 motion as a second motion in its decision and order. Docket # 45, Ex. 25 at 2. The undersigned will treat the claim as presented in a second § 440.10 motion.

[17] Respondent further contends that the trial court's decision only addressed Petitioner's newly discovered evidence claim, not his due process claim, and that Petitioner should have moved for re-argument to address it, which Petitioner did not do. Docket # 45 at 14. That the trial court denied Petitioner's motion on procedural grounds does not mean that it ignored Petitioner's underlying due process claim. Furthermore, the trial court stated that "the evidence is such that [the introduction of said evidence] would not have resulted in a more favorable verdict. . ." Id., Exh. 25. For that reason, Respondent's contention is without merit.

Castillo v. Hodges, No. 01 Civ. 2172 (SAS), 2004 U.S. Dist. LEXIS 5077 at *11-16 (S.D.N.Y. Mar. 29, 2004). The Court has no record or assertion that Petitioner ever sought leave to appeal the denial. Petitioner is both prohibited from now seeking leave to appeal the denial, see N.Y. C.P.L. §§ 460.10(4)(a) and 460.30(1), and from attempting to exhaust this claim through a third § 440.10 motion. N.Y. C.P.L. § 440.10(2)(a). Since Petitioner lacks recourse in state court to exhaust the claim, his prosecutorial misconduct claim should be deemed exhausted, but procedurally defaulted. See Grey, 933 F.2d at 120-21. Second, the trial court cited N.Y. C.P.L. § 440.10(2)(c) and (3)(c) as the authority for its decision. Docket # 45, Exh. 25 at 3. "The cases in this Circuit hold that C.P.L. § 440.10(2) is an 'adequate and independent' state procedural ground barring federal habeas review." Hayward v. Brown, No. 09 Civ. 6495 (LAK)(AJP), 2010 U.S. Dist. LEXIS 65860 at *76-77 (S.D.N.Y. Jul. 1, 2010) (collecting cases). For these reasons, Petitioner's prosecutorial misconduct claim should be denied.[18]

## B. The Suggestive Witness Identification Claims

This Court determined in its November 2016 order that Petitioner's Amended Petition would be deemed to have asserted two claims based on the allegedly suggestive identification of Petitioner at trial, those being prosecutorial misconduct and legal sufficiency of the evidence. Docket # 41.

---

[18] In any event, were the Court to proceed to the merits, this claim would fail. In its decision, the state trial court found that Petitioner was aware of the Burgess letter at least before he appealed his conviction, Docket # 45, Exh. 25 at 2-3. The state court transcripts demonstrate that Petitioner's counsel had knowledge of the Burgess letter as early as November 18, 2010, several months before trial, and that trial counsel decided not to pursue it at trial. See Tr. # 9-11: 11-15, Docket 49, Exh. 6. On that basis, Petitioner's contention that this evidence was improperly withheld is without merit.

### 1.  Prosecutorial Misconduct: Improper Bolstering of a Witness

Petitioner asserts that the prosecution improperly bolstered Henry's identification by engaging in a suggestive identification procedure at trial.  Docket # 36.  According to Petitioner, the prosecutor pointed out Petitioner to Henry during Henry's testimony.  Id.  Henry had considerable trouble identifying Petitioner as one of the attempted burglars.  See Section I above, pp.5-7 (summarizing Henry's identification testimony).

On direct appeal, Petitioner asserted a legal sufficiency of the evidence claim based in part of the conduct asserted in his habeas petition.  One of the factual allegations supporting Petitioner's legal sufficiency claim was that Henry was not able to identify Petitioner until the prosecutor pointed to Petitioner (who was seated at the defense table next to the defense attorney) while stating that Petitioner was one of the men at Henry's front door the night of the attempted robbery.  Docket # 9, Exh. 10.  Petitioner did not separately assert that the allegedly suggestive identification constituted prosecutorial misconduct.  Petitioner's application for leave to appeal to the Court of Appeals likewise did not present a prosecutorial misconduct claim based on a suggestive in-court witness identification procedure.  See id., Exh. 13.  It should be noted that, although Petitioner is pro se in the present matter, he was represented by counsel on his direct appeal.  The Appellate Division addressed Petitioner's legal sufficiency claim in general terms: "[V]iewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt of all the counts of which he was convicted."[19]  Sanabria, 110 A.D.3d at 1012 (internal citations

---

[19] In his appellate brief, Petitioner argued that the evidence was legally and factually insufficient to establish that he was one of the men who approached the victim's house and that he possessed a gun.  Id., Exh. 10.  In its decision, the Appellate Division specifically addressed the sufficiency as it related to the gun charge but did not specifically address Petitioner's claim that the evidence was not legally sufficient to establish his presence during the commission of the crime, Sanabria,

omitted).  The Court of Appeals summarily denied Petitioner's application seeking leave to appeal to that body.  Sanabria, 22 N.Y.3d 1141.

Petitioner raised a prosecutorial misconduct claim based on the allegedly improper in-court witness identification in his November 2015 motion before the trial court.  Docket # 45, Exh. 22.  As stated above, the trial court denied the November 2015 motion on procedural grounds.  Id., Exh. 25.  The trial court appears not to have addressed Petitioner's claim that the prosecution's identification procedure was unduly suggestive.  See id.  Petitioner did not seek leave to appeal the trial court's denial to the Appellate Division, nor did he move for re-argument.

By failing to include the prosecutorial misconduct claim in his direct appeal and by failing to seek leave to appeal the denial of his § 440.10 motion, Petitioner failed to exhaust this prosecutorial misconduct claim.  Washington, 1997 U.S. Dist. LEXIS 4587 at *8-9; Carter v. McGinnis, No. 01 Civ. 655S, 2005 U.S. Dist. LEXIS 43281 at *13 (W.D.N.Y. July 29, 2005) ("Specifically, the petitioner must have set forth in state court all of the essential factual allegations . . . and must have placed before the state court essentially the same legal doctrine he [or she] asserts in his [or her] federal petition.") (quoting Daye, 696 F.2d at 191-92) (internal quotations omitted); Brewer, 2018 U.S. Dist. LEXIS 21949 at *40-41.  Any relevant timeframe within which Petitioner could pursue his prosecutorial misconduct claim has now passed.  See N.Y. C.P.L. §§ 460.10(4)(a), 460.30(1).  As there is no longer any remedy available at state law, Petitioner's claims should be deemed exhausted and procedurally defaulted.  N.Y. C.P.L. § 440.10(2)(c); Chu v. Artus, No. 07 Civ. 6684 (RJS) (DF), 2011 U.S. Dist. LEXIS 155680 at *72-

---

110 A.D.3d at 1012.  The decision implicitly addressed it, however, when it found that the evidence presented at trial was legally sufficient to establish guilt on all counts.  Id.

73 n.18 (S.D.N.Y. Aug. 9, 2011) (citing Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006))

("Petitioner was only entitled to a single direct appeal."); see Grey, 933 F.2d at 120-21.

Moreover, as stated above, the trial court denied Petitioner's November 2015 motion on

procedural grounds, thereby preventing further federal review of this claim.  See Hayward, 2010

U.S. Dist. LEXIS 65860 at *76-77.

### 2.  Legally Insufficient Evidence

Petitioner claims that Henry's inability to positively identify him at trial, along with (1)

Henry's limited opportunity to view the attempted burglars during the commission of the crime,

(2) Henry's description of the attempted burglars, and (3) Henry's level of certainty regarding

Petitioner's presence during the commission of the crime, was legally insufficient to sustain

Petitioner's conviction (the "legal sufficiency claim").[20]  See Docket # 36; Docket # 49.

Petitioner argued on direct appeal that Henry misidentified Petitioner and that the

misidentification rendered the evidence presented at trial legally and factually insufficient to

establish the crimes charged.  Docket # 9, Exh. 10 at 24.  The Appellate Division found that the

evidence presented at trial was "legally sufficient to establish [Petitioner]'s guilt beyond a

reasonable doubt of all the counts of which he was convicted." Sanabria, 110 A.D.3d at 1012.

Petitioner did not raise the distinct claim that the in-court witness identification was unduly

suggestive thereby violating his constitutional right to a fair trial.  By failing to make the unduly-

suggestive argument, Petitioner failed to exhaust his claim that the evidence was legally

insufficient because of a suggestive identification at trial.  See Washington, 1997 U.S. Dist.

LEXIS 4587 at *8-9; Carter, 2005 U.S. Dist. LEXIS 43281 at *13 (quoting Daye, 696 F.2d at

---

[20] Petitioner raised another legal insufficiency claim (challenging the evidence that Petitioner illegally possessed a weapon) in his original petition that this Court deemed to have been abandoned. Docket # 41.

191-92); <u>Colon v. Connell</u>, No. 07 Civ. 7169 (BSJ) (JCF), 2009 U.S. Dist. LEXIS 58764, at *4-5 (S.D.N.Y. July 9, 2009) (holding that where, on appeal, petitioner did not challenge a show-up identification procedure on due process grounds, instead challenging the reliability of the identification as support for a weight-of-the-evidence claim, petitioner's suggestive identification claim was unexhausted). Nor may he do so now as New York law allows for only one direct appeal. <u>Roa v. Portuondo</u>, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2007) (". . . a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals."). Therefore, Petitioner's legal sufficiency claim should be deemed exhausted and procedurally defaulted. <u>See</u> <u>Grey</u>, 933 F.2d at 120-21.

To overcome a procedural default, Petitioner would need to show either cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 749-50. "Cause for a procedural default is established when some objective factor external to the defense impeded the petitioner's efforts to comply with the state's procedural rule." <u>Butler v. Heath</u>, No. 12 Civ. 03327 (SAS) (DF), 2015 U.S. Dist. LEXIS 67247 at * 26 (S.D.N.Y. Feb. 18, 2015) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted). Prejudice here means that "the procedural default worked to [Petitioner's] actual and substantial disadvantage . . . [Petitioner] would have to demonstrate convincingly that his claims are not only meritorious, but that their forfeit actually and substantially disadvantaged him [or her]." <u>Butler</u>, 2015 U.S. Dist. LEXIS 67247 at * 39 (citing <u>U.S. v. Frady</u>, 465 U.S. 152, 170 (1982)) (internal quotation marks omitted). A fundamental miscarriage of justice requires a showing of actual innocence proved through the introduction of new evidence. <u>See</u> <u>Colon v. Connell</u>, No. 07 Civ. 7169 (BSJ) (JCF), 2009 U.S. Dist. LEXIS 58764 at *7-8 (S.D.N.Y. July 9, 2009); <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006) ("[Petitioner]

must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' ") (quoting Schlup, 513 U.S. at 327).

Here, Petitioner has not presented evidence showing that something beyond his control caused his default. Petitioner argues that the trial court's delay in adjudicating his April 2013 motion was cause for his failure to appeal. Docket # 49. Although this could provide cause for Petitioner's failure to appeal before the trial court's adjudication, it does not constitute cause for why Petitioner failed to appeal after the trial court's 2016 orders. Furthermore, Petitioner faces no actual prejudice from the default because none of Petitioner's claims, as asserted in the Petition, have merit. Finally, Petitioner has not presented any new evidence to support a finding of actual innocence; therefore, Petitioner has failed to show that a failure to excuse the default would result in a fundamental miscarriage of justice. For these reasons, Petitioner's legal sufficiency claim is procedurally barred and should be denied.[21]

---

[21] The undersigned respectfully recommends that Your Honor should deny this claim but provides the following analysis of the merits should Your Honor find it helpful. When evaluating a legal sufficiency claim on habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Even though Henry had considerable difficulty identifying Petitioner at trial, her testimony and positive identification provides sufficient basis for a rational jury to find Petitioner guilty of attempted burglary beyond a reasonable doubt. Undermining the identification would allow Petitioner to prevail on his legal sufficiency claim (as the identification was the only evidence placing Petitioner at Henry's door). However, case law in this Circuit suggests that, for first time in-court identifications, there is no due process violation where counsel had an opportunity at trial to cross-examine the witness and test the reliability of the identification. See, e.g., Hankins v. Smith, No. 03 Civ. 5404 (WHP) (KNF), 2008 U.S. Dist. LEXIS 81745 at *6-7 (S.D.N.Y. Oct. 14, 2008) (citing United States v. Brown, 699 F.2d 585, 593-94 (2d. Cir. 1983); People v. Madison, 8 A.D.3d 956, 957 (4th Dept. 2004) ("In cases where there has been no pretrial identification procedure and the defendant is identified in court for the first time, the defendant is not deprived of a fair trial because defendant is able to explore weaknesses and suggestiveness of the identification in front of the jury.")); Castillo v. Walsh, 443 F. Supp. 2d 557, 568-570 (S.D.N.Y. 2006); Chapman v. Meachum, 790 F. Supp. 63, 66-68

## C.  Trial Court Error

Petitioner asserts that the trial court erred when it failed to give a duress jury charge. Docket # 36.  The claim was first raised in this federal habeas petition. In Petitioner's direct appeal, he raised a similar jury charge issue argued solely within the context of an ineffective assistance of counsel claim.  Docket # 9, Exh. 10.  Petitioner ascribed no error to the trial court for failing to give a duress jury instruction sua sponte.  By failing to argue in his direct appeal that the lack of a duress jury charge constituted trial court error, a separate legal claim from ineffective assistance of counsel, Petitioner failed to comply with the Second Circuit's fair presentation requirement.  Porter v. Greiner, No. 00 Civ. 6047(SJ)(VVP), 2005 U.S. Dist. LEXIS 31828 at * 36-37 (E.D.N.Y. Nov. 18, 2005) (quoting Picard v. Connor, 404 U.S. 270, 275-76 (1971), and Daye v. Attorney Gen. of New York, 696 F.2d 186, 192 (2d Cir. 1981)) ("A claim may be fairly presented to the state courts if the legal basis of the claim made in state court was the substantial equivalent of that of the habeas claim.' ") (internal quotation marks omitted); Carter, 2005 U.S. Dist. LEXIS 43281 at *13 (quoting Daye, 696 F.2d at 191-92).  New York law does not allow for successive direct appeals leaving Petitioner with no ability to return to state court to exhaust the claim.  Roa, 548 F. Supp. 2d at 78; Reyes v. Keane, 118 F.3d 136, 139 (2d. Cir. 1997) (collecting cases); NY C.P.L. § 440.10(2)(c) (requiring the Court to deny any § 440.10 motion based on a claim that was visible on the record but that the defendant unreasonably failed to include in his or her appeal).  Therefore, this claim should be deemed exhausted and procedurally defaulted.  Reyes, 118 F.3d at 139; Grey, 933 F.2d at 120-21. Petitioner has shown neither cause and prejudice nor a fundamental miscarriage of justice to

---

(D. Conn. 1992).  To the extent Petitioner intended the Court to consider "factual insufficien[cy]," as presented on direct appeal (Docket # 9, Exh. 10 at 17, 22-23), that claim was not raised in his habeas petition.

overcome the procedural bar. Without such a showing, a federal court may not review the trial-court-error claim or grant federal habeas relief based upon it. See Grey, 933 F.2d at 121 (citing Murray v. Carrier, 477 U.S. 478, 492 (1986), and Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977)); Coleman, 501 U.S. at 750.

## D. The Ineffective Assistance of Counsel Claims

Petitioner asserts that he received ineffective assistance of counsel based on the following grounds: (1) trial counsel failed to request a duress jury charge, (2) trial counsel failed to object to the prosecution's questions concerning unrelated charges, (3) trial counsel failed to request a missing-witness juror charge, (4) trial counsel failed to investigate the existence of the Burgess letter, (5) trial counsel failed to effect Petitioner's desire and right to testify before the grand jury, and (6) appellate counsel failed to raise a Rosario or Brady violation claim related to the Burgess letter. Docket #36.

Petitioner's first ground, that trial counsel failed to request a duress jury charge, is exhausted. Petitioner asserted this claim on direct appeal citing Strickland v. Washington, 466 U.S. 668 (1984), and New York's ineffective assistance of counsel standard. Docket # 9, Exh. 10 at 32-37. In its October 2013 decision, the Appellate Division held that Petitioner had failed to establish ineffective assistance of counsel. Sanabria, 110 A.D.3d. at 1013. On or about November 1, 2013, Petitioner applied for leave to appeal the Appellate Division's decision to the Court of Appeals. Docket # 9, Exh. 13. Petitioner's application for leave included a reproduction of all the claims he argued on direct appeal. Id. On February 25, 2014, the Court of Appeals denied Petitioner's application for leave. Sanabria, 22 N.Y.3d 1141. Having presented the factual and legal basis for this ineffective assistance of counsel claim to the highest state court, Petitioner properly exhausted the claim. The Court may now proceed to its merits.

When evaluating the merits of an ineffective assistance of counsel claim, federal courts are bound by the two-pronged test set forth in Strickland, 466 U.S. 668.  Under Strickland, Petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced Petitioner.  Strickland, 466 U.S. at 687.  Counsel's performance is deficient if "counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms" and "considering all of the circumstances."  Id. at 687-88.  There is a strong presumption in favor of finding that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.  To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Satisfying this burden is particularly difficult in the federal habeas context because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court cannot grant relief under AEDPA unless it finds that the state court decision was either contrary to or an unreasonable application of clearly established federal law.[22]  28 U.S.C. § 2254(d)(1).  Both the AEDPA and Strickland standards are "highly deferential," and "when the two apply in tandem, review is 'doubly' so."  Harrington, 562 U.S. at 105.  "The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

---

[22] Where a state court's factual determination is at issue, a federal court cannot grant an application for a writ of habeas corpus unless the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

New York has developed a different legal standard for ineffective assistance of counsel claims. Under New York law, an attorney provides ineffective assistance of counsel when, given all the circumstances, that attorney fails to provide "meaningful representation" to his or her client. People v. Baldi, 54 N.Y.2d 137, 147 (1981) ("So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met."). The Baldi standard differs from the Strickland standard in that, under Baldi's "meaningful representation" analysis, "the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case . . . [t]hus, whether defendant would have been acquitted of the charges but for counsel's errors is relevant, but not dispositive . . ." People v. Benevento, 91 N.Y.2d 708, 714 (1998) (internal citations omitted). Despite the differences between the standards, the Second Circuit has held that the Baldi standard is not contrary to Strickland. Rosario v. Ercole, 601 F.3d 118, 124-26 (2d Cir. 2010).

Petitioner's brief to the Appellate Division based its ineffective assistance claim on both Strickland and Baldi. Docket # 9, Exh. 10 at 35-37. The Appellate Division denied Petitioner's ineffective assistance of counsel claim citing only Baldi, 54 N.Y.2d at 147, and Benevento, 91 N.Y.2d at 713. Sanabria, 110 A.D.3d at 1013. According to the standard established in Rosario v. Ercole, the Appellate Division's decision, although based on New York state law, was not contrary to Strickland. Therefore, the issue the Court must determine is whether the Appellate Division's decision was an unreasonable application of Strickland.

Turning first to the objective reasonableness of counsel's performance, Petitioner essentially argues that he was entitled to a duress jury charge but that his trial counsel failed to

request one. Petitioner bases his entitlement to the charge on his testimony at trial that he asked to leave the car once he heard several clicking sounds, impliedly the sounds of a gun. Docket # 36; Docket # 49. Petitioner testified that he went to open the car door, but Burgess pulled him away and told him to "get the f--- in." Tr. # 9-8: 90-91. Under New York law, the defendant has the burden to prove duress; the defendant must show that he or she was coerced to engage in the illegal conduct "by use or threatened imminent use of unlawful force" that a person of reasonable firmness would have been unable to resist. See N.Y. C.L.S. Penal § 40.00(1); People v. Thompson, 34 A.D.3d 325, 325 (1st Dept. 2006) (holding that the trial court properly denied defendant's request for a duress jury charge when "[d]efendant's testimony, [] taken together with all the other evidence and viewed in the light most favorable to defendant, did not create a reasonable view of the evidence to support such a charge.").

Here, trial counsel's decision not to request a duress jury charge was not objectively unreasonable. Based on Petitioner's two lines of testimony going directly to duress (the clicking sound and his being prevented from leaving), and Petitioner's own testimony that he never saw the gun, it is at best unclear whether Petitioner was entitled to a duress jury charge. Tr. # 9-8: 90-91, 96. Petitioner did not testify that the clicking sound made him think there was a gun in the car, and he did not testify that he was afraid of an imminent use of force against him. The jury charge itself would also have implied that Petitioner committed the illegal conduct, an implication which an attorney might reasonably choose to avoid considering the tenuous basis for the charge and the defense's strategy of asserting Petitioner did not participate in the attempted burglary at all. Furthermore, Petitioner has not shown any prejudice to his defense due to the lack of this jury instruction. The jury heard Petitioner's testimony and had an opportunity to credit it accordingly. Even when faced with contradictory testimony from the

eye-witness who placed Petitioner at the scene of the attempted burglary, the jury decided to convict. Since Petitioner failed to show deficiency or prejudice, Petitioner has failed to establish that he received ineffective assistance of counsel under the standard set by Strickland. The Appellate Division's decision to that effect, then, was not an unreasonable application of Strickland. The undersigned concludes, and respectfully recommends that Your Honor should conclude, that this claim should be denied.

For his second ineffective assistance of counsel claim, Petitioner asserts that his trial counsel was constitutionally ineffective for failing to object to the prosecutor's questions regarding Petitioner's prior criminal acts. Docket # 36. Petitioner first raised the claim in this federal habeas petition. On direct appeal Petitioner raised a related claim which alleged that the prosecution engaged in misconduct when it questioned Petitioner about the prior criminal acts. Docket # 9, Exh. 10. Petitioner's appeal did not allege ineffective assistance of counsel based on counsel's failure to object to that line of questioning. As a result, the state courts were not fairly presented with the ineffective assistance of counsel claim asserted here. Porter, 2005 U.S. Dist. LEXIS 31828 at * 36-37 ("A claim may be fairly presented to the state courts if the legal basis of the claim made in state court was the substantial equivalent of that of the habeas claim.") (internal quotation marks omitted); Carter, 2005 U.S. Dist. LEXIS 43281 at *13 (quoting Daye, 696 F.2d at 191-92); Picard, 404 U.S. at 276 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). Petitioner now would be prohibited from returning to state court to pursue this claim. Chu v. Artus, No. 07 Civ. 6684 (RJS) (DF), 2011 U.S. Dist. LEXIS 155680 at *72-73 n.18 (S.D.N.Y. Aug. 9, 2011) (citing Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006)); see N.Y. C.P.L. § 440.10(2)(c) (requiring the state court to deny a § 440.10 motion when sufficient facts appear on the record to review the

claim and no such review occurred due to defendant's unjustifiable failure to raise the issue on an appeal actually perfected by him or her).  Since Petitioner cannot now exhaust this claim, it should be deemed exhausted and procedurally defaulted.  See Grey, 933 F.2d at 120-21.  As mentioned above, Petitioner has shown neither cause and prejudice nor a fundamental miscarriage of justice to overcome the procedural bar.  Therefore, this claim should be denied.

For his third ineffective assistance of counsel claim, Petitioner asserts that trial counsel was constitutionally ineffective for failing to request a missing-witness jury charge.  Docket # 36.  This claim first appears in Petitioner's federal habeas petition.  No state court has had the opportunity to address this claim; therefore, the claim is unexhausted.  See Coleman, 501 U.S. at 731; Daye, 696 F.2d at 191.   The text of AEDPA as well as the principles of comity and federalism that underlie federal habeas review prevent the Court from reviewing the claim on that ground alone.  Furthermore, Petitioner has run out of time to raise this claim in state court.  See Chu, 2011 U.S. Dist. LEXIS 155680 at *72-73 n.18; N.Y. C.P.L. § 440.10(2)(c).  Therefore, this claim should be deemed exhausted and procedurally defaulted.  See Grey, 933 F.2d at 120-21.  As stated above, Petitioner has not shown either cause and prejudice or a fundamental miscarriage of justice necessary to overcome the procedural default.  The claim should be denied.

For his fourth ineffective assistance of counsel claim, Petitioner asserts that trial counsel was constitutionally ineffective for failing to investigate or have knowledge of the Burgess letter.  Docket #36.  Petitioner raised this claim for the first time in his federal habeas petition.[23]  For the reasons stated in the immediately preceding paragraph, this claim should be denied.

---

[23] In Petitioner's application for a writ of error coram nobis, Petitioner raised the separate claim that he received ineffective assistance of appellate counsel based on counsel's failure to assert the trial counsel claim asserted here.  Docket # 9, Exh. 16.  Not only would this fail to exhaust

For his fifth ineffective assistance of counsel claim, Petitioner asserts that his trial counsel was constitutionally ineffective for failing to effect Petitioner's desire and right to testify before the grand jury.[24] Docket #36. Petitioner raised this claim in the April 2013 Motion. Docket # 9, Exh. 19. According to Petitioner, trial counsel waived his right to appear before the grand jury knowing that Petitioner wished to testify. Id. The claim was not repeated in Petitioner's November 2015 Motion. The trial court denied the April 2013 Motion on the grounds that (1) failure to provide for Petitioner's testimony at the grand jury standing alone did not constitute ineffective assistance of counsel and that (2) the claim was a matter of record that could have been raised on direct appeal citing N.Y. C.P.L. § 440.10(2)(c). Id., Exh. 26. There is nothing before the Court to suggest Petitioner appealed the trial court's denial. As stated above, the trial court's reliance on § 440.10(2)(c) is an independent and adequate state law ground that bars federal review of the claim. See Hayward, 2010 U.S. Dist. LEXIS 65860 at *76-77. Furthermore, even if the claim was properly exhausted, which it was not, and the Court was to proceed to the merits, Petitioner's claim would fail. See e.g. Williams v. Ricks, No. 02 Civ. 2131 (RCC) (RLE), 2004 U.S. Dist. LEXIS 16752 at * 18-19 (S.D.N.Y. Aug. 23, 2004) ("Federal and state courts in New York have consistently held that counsel's failure to effectuate a defendant's right to appear before the grand jury does not establish ineffective assistance of counsel.") (collecting cases), Davis v. Mantello, 42 Fed. Appx. 488, 491 n.1 (2d Cir. 2002)

---

the trial counsel claim, see Cumberland v. Graham, No. 08 Civ. 04389 (LAP) (DF), 2013 U.S. Dist. LEXIS 187734 at *60-61 (S.D.N.Y. Aug. 5, 2013) (citing Turner, 262 F.3d at 123), Petitioner did not seek leave to appeal the Appellate Division's denial of his application thereby rendering the claim he did present unexhausted. See O'Sullivan, 526 U.S. at 845.

[24] Pursuant to N.Y. C.P.L. § 190.50(5)(a), "[w]hen a criminal charge against a person is being or is about to be or had been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his [or her] own behalf" if such person gives written notice to the district attorney prior to the filing of an indictment or information. N.Y. C.P.L. § 190.50(5)(a).

(unpublished) ("A defendant's right to testify before the grand jury is not a constitutional right; rather it is a statutorily created right. New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel.") (internal citation omitted); Kohler v. Kelly, 890 F. Supp. 207, 213-14 (W.D.N.Y. 1994), aff'd 58 F.3d 58 (2d Cir. 1995)). For all of these reasons, this claim should be denied.

For his last ineffective assistance of counsel claim, Petitioner asserts that his appellate counsel was constitutionally ineffective for failing to raise a Rosario[25] or Brady claim based on the prosecution withholding exculpatory evidence (i.e. the Burgess letter). Docket #36. To exhaust a claim for ineffective assistance of appellate counsel, Petitioner must have filed an application for a writ of error coram nobis with the Appellate Division and sought leave to appeal any denial of that application to the Court of Appeals. Curet v. Graham, No. 14 Civ. 04831 (VSB) (DF), 2019 U.S. Dist. LEXIS 7238 at *57 (S.D.N.Y. Jan. 11, 2019) (citing Shomo v. Maher, No. 04 Civ. 4149 (KMK), 2005 U.S. Dist. LEXIS 5341 (S.D.N.Y. Mar. 31, 2005)). Petitioner applied for a writ of error coram nobis in the Appellate Division and raised this claim. Docket # 45, Exh.16. The Appellate Division denied Petitioner's application, and there is no evidence before the Court that Petitioner sought leave to appeal the denial. Sanabria, 125 A.D.3d at 1012. Petitioner can no longer seek leave to appeal the Appellate Division's denial because the time for seeking such an appeal has long passed. See N.Y. C.P.L. §§ 450.90(1), 460.10(5)(a). Even if Petitioner were to return to state court to pursue this claim, AEDPA's statute of limitations has elapsed, prohibiting federal review of the claim. Cf. Smith v.

---

[25] As stated above, a Rosario violation is a state law claim for which no federal habeas relief is available. A Brady violation implicates a federal, constitutionally protected right and would be cognizable in this habeas action.

McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (holding that the filing of state relief applications does not re-set the AEDPA statute of limitations period).  Therefore, this claim should be deemed exhausted and procedurally barred, and it should be denied.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the petition should be dismissed in its entirety.  Since Petitioner's claims present no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  See Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: September 16, 2019

      White Plains, NY

                            **Respectfully submitted,**

                            Lisa Margaret Smith
                            United States Magistrate Judge
                            Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the Petitioner.